IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 17-250 |
| | ) | Civil No. 20-95 |
| JAMAL BROOKS, | ) | |
| Defendant. | ) | |

## OPINION

### I.    Introduction

Pending before the court is a motion to vacate, set aside, or correct sentence by a person in federal custody under 28 U.S.C. § 2255 (the "§ 2255 motion") filed by petitioner Jamal Brooks ("Brooks"). (ECF No. 113.) Brooks, who pleaded guilty to and was sentenced for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), raises three grounds for relief. In each ground for relief, he asserts a claim for ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. The government opposes Brooks' § 2255 motion. (ECF No. 133.) As set forth in this opinion, Brooks' failed to make any showing that he was prejudiced by his counsel's allegedly deficient performance. His § 2255 motion will be denied on that basis.

### II.    Background

On August 22, 2017, a criminal complaint was filed against Brooks charging him with possession of a firearm and ammunition by a convicted felon, a violation of 18 U.S.C. § 922(g)(1). (ECF No. 1 at 1.) On the same day, he was arrested and appeared before a magistrate judge. (ECF No. 2.) On August 28, 2017, defendant waived his right to a detention hearing. (ECF No. 7.) On September 1, 2017, Brooks filed a motion for a detention hearing, which was granted. (ECF Nos. 10, 11.) On September 7, 2017, a magistrate judge

held a detention hearing. (ECF No. 13.) The magistrate judge entered an order of detention pending trial because the government proved by "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." (ECF No. 14 at 2.) The court found that the weight of evidence against Brooks was strong and he had a history of violence or use of weapons. (Id.)

On September 19, 2017, a grand jury returned a one-count indictment charging Brooks with possession of a firearm and ammunition by a convicted felon, a violation of 18 U.S.C. § 922(g)(1). (ECF No. 15.) The charge in the indictment is based upon three firearms and ammunition recovered from a search of Brooks' residence conducted pursuant to a search warrant on August 22, 2017.

Brooks filed a motion to dismiss the indictment arguing, among other things, that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him because his underlying predicate offense, a misdemeanor conviction for carrying a firearm without a license in violation of 18 PA. CONS. STAT. § 6106(a)(2), is not a serious offense. (ECF No. 39 at 10.) The court applied the two-step analysis set forth by the Third Circuit Court of Appeals in Binderup v. Attorney General, 836 F.3d 336 (3d Cir. 2016) (en banc), to analyze Brooks' as-applied constitutional attack on § 922(g)(1). That two-step analysis requires the court to consider evidence and legal argument presented by the parties to determine (1) whether § 922(g)(1), a presumptively lawful regulation, burdens Brooks' Second Amendment rights, and, if so, (2) whether § 922(g)(1) satisfies intermediate scrutiny. Binderup, 836 F.3d at 355.

The court issued findings of fact and conclusions of law in which it concluded that Brooks satisfied his burden to show that his disqualifying conviction was not serious, but the government satisfied *its* burden to show that disarming people like Brooks, i.e., people who

have a history of engaging in gun violence, were convicted of a misdemeanor for carrying a

firearm without a license, and continued to engage in gun violence, is substantially related to

the government's interest in promoting public safety and preventing armed mayhem. (ECF

No. 74.) The court on that basis denied the motion to dismiss the indictment with respect to

Brooks' argument that § 922(g)(1) was unconstitutional as applied to him. (ECF Nos. 74,

75.)

      The court in its findings of fact and conclusions of law relied on, among other things,

evidence introduced at the hearing about three different incidents of gun violence involving

Brooks. That evidence is summarized as follows:

– The first incident occurred in the early morning hours of April 19, 2015, when Brooks
confronted Felicia Johnson ("Johnson"), his neighbor, with respect to a parking
dispute. Brooks was unhappy with Johnson's response and pointed a silver pistol at
her head and with a black pistol fired multiple shots into a car driven by Johnson's
friend. This evidence was based upon the testimony of Johnson and her friend, Joi
Clark ("Clark"). Johnson and Clark similarly testified about a neighbor pointing a gun
at Johnson and then shooting Clark's vehicle. Johnson testified that her neighbor, with
whom she had conversations "a couple times" about parking, was the actor, and Clark
testified that she was told the actor was Johnson's neighbor. (H.T. 6/25/2018 (ECF
No. 65) at 47.) Johnson—when asked to identify the neighbor in court—told the
counsel for the government, who was standing between defense counsel table and the
witness stand: "You are standing in front of him." (H.T. 6/25/2018 (ECF No. 65) at
46.) Johnson then explained that Brooks looked different than he did on the day of the
altercation, i.e., "[h]e just look[ed] different with the hair and the beard." (Id. at 46-
47.) Johnson testified that she told the police that the actor lived next door to her and
that the police went to the neighbor's home to search for him. (Id. at 50-51.)
According to Johnson, the neighbor was not at his home, the neighbor's girlfriend
"came out of that residence," and the neighbor's large white truck, which was parked
on the street prior to the altercation, was gone. (Id. at 51-53.) Pittsburgh Police
Officer Aaron Obsenica ("Obsenica") was the lead reporting officer on scene at
Johnson's home. (H.T. 6/25/2018 (ECF No. 65) at 53-52, 57.) Obsenica testified that
a woman who identified herself as Brooks' girlfriend, i.e., Squires, exited the house
identified by Johnson. (Id. at 55-56.) Squires told officers that Brooks "fled" in a
"White Chevy Tahoe." (Id. at 56.) "A few minutes" after searching Brooks' home,
police officers located Brooks' white Chevy Tahoe "[a] couple blocks" from
Johnson's home. (Id. at 58-59.) Obsenica filed a complaint against Brooks charging
him with "two counts of firearms not to be carried without a license" and aggravated

assault and criminal mischief. (H.T. 6/25/2018 (ECF No. 65 at 60-62.) Clark testified
against Brooks at his preliminary hearing. (Id. at 34.) The charges against Brooks
were held for trial, but were eventually nolle prossed because Obsenica was
"unsuccessful in having Ms. Johnson and Ms. Clark attend court proceedings." (Id. at
63.) Johnson testified that she did not appear in court to testify against Brooks
because she was "scared….They were practically still living there." (Id. at 52.)

–   On May, 5, 2015, Brooks robbed Malcom Hill ("Hill") after Hill finished performing
    at Club Taboo. Hill reported to police officers that a short black male wearing a ski
    mask pointed a silver pistol at him. A black firearm found near the scene of the crime
    was registered to Brooks. Pittsburgh Police Officers Timothy Matson and Dustin
    Rummel ("Rummel") saw a man fitting the description provided by Hill near Club
    Taboo. A key to a Brooks' white Chevy Tahoe was found in the path on which the
    black male ran from Rummel. Brooks' white Chevy Tahoe was found near Club
    Taboo. The vehicle was registered to Squires and contained Brooks' wallet and the
    license plate that was on the vehicle on April 29, 2015, during the shooting at
    Johnson's house. Hill could not be located to testify at Brooks' trial with respect to
    this incident. (ECF No. 74 ¶¶ 26-41).

–   On July 23, 2017, after Tia Collins left her husband's nightclub, Club Elegance,
    Brooks held a pistol to her head and knocked her unconscious with the pistol. (H.T.
    7/10/2018 (ECF No. 67) at 6; ECF No. 74 ¶ 93.) Two shots were fired after Cordell
    Collins, Tia Collins' husband, arrived on scene. (H.T. 7/10/2018 (ECF No. 67) at 9.)
    Shortly after a 9-1-1 call was placed, police officer Adam Lawrence ("Lawrence")
    witnessed a gray sedan with an Ohio license plate being driven erratically from the
    direction of the Collins' residence. (Id. at 20-24.) Lawrence attempted to follow the
    vehicle, but lost sight of it because its taillights were not on. (Id. at 26.) A few
    minutes later, the Verona police located a crashed gray sedan with an Ohio license
    plate. (H.T. 7/10/2018 (ECF No. 67) at 27.) The following items, among others, were
    found inside the vehicle: two firearms registered to Brooks; Tia Collins' firearm
    (which she reported was stolen during the robbery); paperwork for firearms in
    Brooks' name and address; retail reward cards in Squires' name; Brooks' wallet,
    including his driver's license and credit cards; and a cellular telephone registered to
    Brooks. (ECF No. 74 ¶¶ 79-92.)

On October 8, 2018, Brooks filed a motion for release from custody to challenge the

magistrate judge's decision to detain him pending trial and the delay caused in this case.

(ECF No. 76.) On November 13, 2018, the court denied the motion for release from custody.

(ECF No. 81.) The court explained:

Considering the nature of Brooks' offense, the weight of the evidence against him, and the danger he poses to the community, the government met its burden by clear and convincing evidence to show that there is no condition or set of conditions which would reasonably assure that defendant would not pose a danger to the community while on release pending trial. The complexity of the legal issues raised by Brooks' motion to dismiss the indictment warranted most of the delay in this case, and other delays were attributable to Brooks. Under those circumstances, Brooks' due process rights were not violated by his continuous incarceration.

(ECF No. 80 at 15.)

Brooks filed a motion to suppress evidence arguing that evidence upon which the indictment is based was obtained from unconstitutional warrantless searches of a crashed gray Nissan rented by Brooks and a Chrysler parked in the curtilage of Brooks' home, and the search warrant used to search Brooks' home was not issued based upon probable cause. (ECF No. 38.) On October 12, 2018, the court held a hearing with respect to Brooks' motion to suppress. The parties entered exhibits into evidence and the government presented the testimony of three witnesses. On November 15, 2018, the parties each filed proposed findings of fact and conclusions of law. (ECF Nos. 82, 83.) On November 28, 2011, the court ordered the parties to file supplemental briefs to address whether the inevitable discovery doctrine applied to the warrantless search of the crashed gray Nissan. The court ordered the parties to cite to evidence of record in support of their supplemental briefings and, if necessary, request to open the record to introduce evidence in support of their supplemental briefings.  In Brooks' supplemental briefing, his counsel argued that the government waived any argument about the inevitable discovery doctrine because it did not raise the issue in a timely manner, and, in any event, the inevitable discovery doctrine did not apply to law enforcement's search of the crashed gray Nissan. Brooks' counsel argued that—under those circumstances—reopening the record would be improper. (ECF No. 89.) The government in

its supplemental brief argued that the inevitable discovery doctrine applied to the warrantless

search of the crashed gray Nissan because "an inventory search would have inevitably been

conducted at the police department impound facility, and the same evidence would have been

recovered." (ECF No. 90 ¶ 5.) The government requested that the court reopen the record

from the suppression hearing to permit "testimony from Penn Hills Chief of Police Howard

Burton regarding the Inventory

Policy." (Id. ¶ 6.)

The court issued findings of fact and conclusions of law, which set forth the reasons

the motion to suppress would be granted in part and denied in part. (ECF Nos. 92, 93.) The

court found, among other things, that:

> On July 23, 2017, Brooks held a pistol to Tia Collins' head and then
> knocked her unconscious with the pistol. Two shots were fired after Cordell
> Collins arrived on scene. Shortly after the 9-1-1 call was placed, Lawrence
> witnessed a gray sedan with an Ohio license plate being driven erratically from
> the direction of the Collins' residence. Lawrence attempted to follow the
> vehicle, but lost sight of it because its taillights were not on. A few minutes later,
> the Verona police located a crashed gray sedan with an Ohio license plate. The
> following items, among others, were found inside the vehicle: two firearms
> registered to Brooks; Tia Collins' firearm (which she reported was stolen during
> the robbery); paperwork for firearms in Brooks' name and address; retail reward
> cards in Squires' name; Brooks' wallet, including his driver's license and credit
> cards; and a cellular telephone registered to Brooks. The evidence provided by
> the government circumstantially establishes that the actors in the gray sedan
> with a Ohio license plate were driving away from the Collins' residence, where
> they engaged in gun violence and a robbery, and Brooks was one of the actors
> in the vehicle.

(ECF No. 74 ¶ 107.) The court made the following conclusions of law:

1) Brooks had standing to challenge the search of the crashed gray sedan;

2) law enforcement did not comply with its inventory policy with respect to the
   warrantless search of the crashed gray Nissan because the search was
   conducted at the site of the crash and not at the impound facility, but the
   inevitable discovery doctrine applied because a lawful inventory search at the

impound facility would have resulted in law enforcement inevitably discovering the same evidence that it obtained from the search at the scene of the crash;

3) law enforcement did not violate Brooks' rights guaranteed by the Fourth Amendment when an investigating officer stood in the empty lot next to Brooks' home to test the keyless entry system and view the license plate of the Chrysler parked in the driveway;

4) the magistrate judge had a substantial basis upon which to conclude there was probable cause that a firearm or ammunition would be found in Brooks' home;

5) Brooks was not entitled to a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), because he failed to make a substantial preliminary showing that the author of the affidavit of probable cause omitted information from the affidavit that was material to the determination of probable cause; and

6) statements about the location of firearms within the home made by Brooks during the search of the home to an agent would be suppressed because when the agent questioned Brooks, Brooks had not been advised of his rights guaranteed by the Fifth Amendment to the United States as set forth in Miranda v. Arizona, 384 U.S. 436 (1966).

(Id.) The court denied the government's request to reopen the record to present evidence in support of the applicable of the inevitable discovery doctrine to law enforcement's search of the crashed gray Nissan because the record was sufficient for the court to rule upon the issue. (Id. ¶ 32.)

On January 17, 2019, the court held a change of plea and sentencing hearing. (ECF No. 103.) Brooks withdrew his plea of not guilty to count one of the indictment and pleaded guilty to count one of the indictment. The court determined a presentence investigation report was not required in this case to sentence Brooks. The court accepted the parties' binding plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Pursuant to the plea agreement, the court sentenced Brooks to  a term of imprisonment of 17 months, and a term of supervised release of 2 years.

On March 25, 2019, the probation office filed a petition for warrant or show cause hearing alleging that Brooks violated the conditions of his term of supervised release. The petition provided, in pertinent part:

> On March 21, 2019, the offender was arrested by the Avalon Borough Police Department and charged with the following offenses at OTN: G 833394-2: Possession of a Firearm Prohibited (F1), Firearm Not to Be Carried Without License (F3), Possession of Marijuana(M), Carrying Loaded Weapon(S), Obscured Plates- Illegible at Reasonable Distance (S), and Improper Sunscreening (S). The offender was pulled over for a traffic violation, where the arresting officers smelled an odor of marijuana. During a search of the vehicle, a loaded Ruger semi-automatic weapon was found in the center console of the vehicle. Two burnt marijuana joints were located inside the ashtray of said vehicle.

> Due to the serious nature of the new law and technical violations, the Probation Office is respectfully recommending that a warrant be issued for the offender to be lodged as a detainer, no bond be set, and that he remain detained until the final revocation hearing.

(ECF No. 108.) The court granted the petition and ordered the issuance of a warrant to be lodged as a detainer and that bond should not be set. (ECF No. 110.)

On January 22, 2020, Brooks filed the pending § 2255 motion. (ECF No. 113.) On the same day, Brooks filed a motion to stay proceedings until the state charges pending against him were resolved; a hearing on the state charges was scheduled on February 13, 2020. (ECF No. 114.) On January 30, 2020, the court issued a notice pursuant to United States v. Miller, 197 F.3d 644 (3d Cir. 1999). The court denied Brooks' request because, pursuant to the Miller notice, his notice of intent with respect to his § 2255 motion was due on or before February 27, 2020. (ECF Nos. 118, 119.) On February 28, 2020, the court held a supervised release hearing at which it accepted the parties' stipulation with respect to the resolution of the case. The government withdrew the petition dated March 25, 2019, with respect to the alleged violation of the condition that Brooks was prohibited from possessing a firearm and

ammunition. The court found Brooks violated the conditions of his supervised release prohibiting him from committing another federal, state, or local crime, and unlawfully possessing a controlled substance. The court revoked Brooks' term of supervised release and sentenced him to a term of imprisonment of time served and a term of supervised release of 24 months. (ECF No. 125.)

On March 3, 2020, Brooks filed a statement of intent in which he requested 45 days to file an all-inclusive § 2255 motion. (ECF No. 126.) Brooks did not file an all-inclusive § 2255 motion. The court, therefore, ordered the government to respond to Brook's original § 2255 motion. (ECF No. 127.) On July 10, 2020, the government filed a response in opposition to Brooks' § 2255 motion. (ECF No. 133.) Brooks' § 2255 motion having been fully briefed is now ripe for disposition.

### III.   <u>Applicable Law with respect to § 2255 Motions</u>

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Under § 2255, there are four grounds upon which relief may be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence "is otherwise subject to collateral attack."

CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 625 (4th ed. 2011) (quoting <u>Hill v. United States</u>, 368 U.S. 424, 426-27 (1962)). Section 2255 provides as a

remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

"As a collateral challenge, a motion pursuant to [§ 2255] is reviewed much less favorably than a direct appeal of the sentence." United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014) (citing United States v. Frady, 456 U.S. 152, 167–68 (1982)). "Indeed, relief under § 2255 is available only when 'the claimed error of law was a fundamental defect [that] inherently results in a complete miscarriage of justice, and... present[s] exceptional circumstances where the need for the remedy afforded by the writ...is apparent.'" Id. (quoting Davis v. United States, 417 U.S. 333, 346 (1974) (internal quotation marks omitted)).

A district court is required to hold an evidentiary hearing on a § 2255 motion if "the files and records of the case are inconclusive as to whether the movant is entitled to relief." United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). "[T]he court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." Id. at 545. The court concludes that—at this stage—an evidentiary hearing is not necessary in this case because, as described below, based upon the file and records in this case Brooks is not entitled to relief.

To support a claim that counsel's assistance was so defective as to amount to a deprivation of one's Sixth Amendment right to effective assistance of counsel and require reversal of a conviction, a defendant must show two things: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused him prejudice. Williams v. Taylor, 529 U.S. 362, 390-91 (2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)); see Ross v. Dist. Att'y of the Cnty. of Allegheny, 672 F.3d 198, 210 (3d Cir. 2012). To show

deficient performance, the defendant must show that his or her counsel made errors so serious that his or her counsel was not functioning as the counsel guaranteed a defendant by the Sixth Amendment.  Ross, 672 F.3d at 210.

 "With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome." Harrington, 562 U.S. at 104.  It is not enough to show that counsel's errors had "some conceivable effect on the outcome of the proceeding." Id. (citing Strickland, 466 U.S. at 693).  If a court determines that defendant did not suffer prejudice, it need not determine whether the performance of the defendant's counsel was deficient. Marshall v. Hendricks, 307 F.3d 36, 87 (3d Cir. 2002) (citing Strickland, 466 U.S. at 697)).  Courts should generally address the prejudice prong first. See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993). A petitioner who pleaded guilty,  may satisfy the prejudice prong by "proving that 'he would not have pleaded guilty and would have insisted on going to trial' but for his attorney's errors." United States v. Tutis, 845 F. App'x 122, 127 (3d Cir.), cert. denied, 142 S. Ct. 387 (2021) (quoting Hill v. Lockhart, 474 U.S. 52, 59, (1985)).

## IV.    Discussion

Brooks asserts three grounds for relief under § 2255. (ECF No. 113.) The government opposes each ground for relief because, among other reasons, Brooks failed to show that he was prejudiced by his counsel's alleged ineffective performance. (ECF No. 133.) The parties' arguments and the applicable law are each addressed below.

### A.  Ground One

Brooks argues that at the detention hearing in this case before the magistrate judge, his counsel did not cross-examine Clark or Johnson, both of whom testified against him. (ECF No. 113 at 4.) Brooks concedes, however, that "the detention hearing bears no weight on…[his] conviction[.]" (Id.) The government argues that in light of that concession by Brooks, Brooks cannot show that he was prejudiced by his counsel's alleged ineffective performance. (ECF No. 133 at 7.)

A petitioner is limited to the following grounds for relief under § 2255: (1) "the sentence was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;] (3) "the sentence was in excess of the maximum authorized by law, or" (4) the sentence "is otherwise subject to collateral attack…." 28 U.S.C. § 2255(a); Gray v. United States, No. 4:10-CV-1071 CEJ, 2013 WL 2425120, at *1 (E.D. Mo. June 4, 2013). "The movant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence." United States v. Owens, No. 2:15CR00005, 2021 WL 5507030, at *3 (W.D. Va. Nov. 24, 2021). A petitioner may not challenge the district court's decision with respect to pretrial detention via a § 2255 motion. See Gray, 2013 WL 2425120, at *1 (explaining that "[t]he denial of a pretrial detention hearing is not a cognizable claim in a § 2255 proceeding"). Based upon the foregoing, Brooks cannot challenge this court's order of detention pending trial via his § 2255 motion. Under those circumstances, to the extent Brooks argues that his counsel's performance at the detention hearing was deficient and he was prejudiced by the alleged deficiency because he was detained pending trial, his § 2255 must be denied.

Second, even if Brooks could show that his counsel's allegedly deficient performance during the detention hearing resulted in, or had any impact on, his conviction and sentence, he

did not show that he was prejudiced by his counsel's allegedly deficient performance. Brooks argues that he "continuously spoke to [his counsel]…voicing…[his] concern about the witnesses['] testimony, including the inconsistencies, and false testimony requesting that…[Clark] and…[Johnson] be cross-examined to further understand their view of events from the night in question on 4-19-15." (ECF No. 113 at 4.) Brooks, however, did not allege that there is a reasonable probability that—but for his counsel's failure to cross-examine Clark or Johnson—the result of this case would have been different, i.e., Brooks would not have pleaded guilty. Under those circumstances, even if Brooks could show that his counsel's allegedly deficient performance at the detention hearing resulted in, or had any impact on, his conviction and sentence, he did not show that he was prejudiced by his counsel's allegedly deficient performance and would not be entitled to relief under § 2255. Based upon the foregoing, the § 2255 motion will be denied with respect to ground one.

## B.  Ground Two

Brooks argues that his counsel's performance was ineffective because—without consulting him—she declined the court's offer to open the record. (ECF No. 113 at 5.) The government argues that even if Brooks' counsel's performance was deficient because she did not consult with him before filing the supplement with respect to the inevitable discovery doctrine and objecting to reopening the record, Brooks did not show that he was prejudiced by his counsel's actions. (ECF No. – at 8.)

The government is correct. Even if the court found that Brooks' counsel's performance was deficient because she did not consult Brooks prior to filing the supplement with respect to the inevitable discovery doctrine, he did not satisfy his burden to show that he was prejudiced because his counsel did not consult with him. Brooks does not point to any evidence to show

that if his counsel consulted with him and the court—upon his request—reopened the record, he would not have pleaded guilty to the crime charged against him in the indictment. In other words, Brooks complains that his counsel did not consult him before filing the supplement, but does not allege that the outcome of this case would have been any different had she consulted with him. Under those circumstances, Brooks' § 2255 motion will be denied with respect to ground two.

### C. Ground Three

Brooks argues that his counsel's performance was deficient because his counsel failed to show him surveillance video footage from Club Elegance on July 23, 2017 (the "video footage"), which was favorable to him and material to his guilt or punishment, pursuant to Brady v. Maryland, 373 U.S. 83 (1963) ("Brady"), and the court had ordered the government to produce the video footage to Brooks. (ECF No. 113 at 7) According to Brooks, Tia Collins and Cordell Collins alleged that the video footage showed: (1) the two men who attacked them on July 23, 2017; and (2) the vehicle that the police pursued in connection with the robbery of Tia Collins on July 23, 2017. (Id.) The government opposes this ground for relief because, among other reasons, Brooks did not satisfy his burden to show that he suffered prejudice because his counsel did not provide him the surveillance video footage to view; indeed, the government argues that the video footage is "irrelevant to this case and had no impact on the outcome of…[this] case." (ECF No. 133 at 10.)

First, the court did not rule that the surveillance footage was Brady material, i.e., favorable to Brooks and material to his guilt or punishment; rather, the government at the pretrial motions hearing in this case represented to the court that it obtained the footage the day of the pretrial motions hearing, i.e., February 28, 2016, and it agreed to provide the footage

to Brooks' counsel. (H.T. 2/26/2018 (ECF No. 48) at 6, 9-10.) Second, Brooks complains only that his counsel did not provide him the surveillance footage.[1] He alleges that his counsel viewed the footage and determined that the footage did not contain any evidence that would be beneficial to Brooks' case. He does not argue that he was prejudiced by his counsel's decision to not provide him with the video footage or her determination that it did not contain evidence beneficial to his case. Under those circumstances, Brooks did not satisfy his burden to show that he was prejudiced by his counsel's decisions. His § 2255 motion will, therefore, be denied with respect to this ground for relief.

## V.   Conclusion

Brooks did not argue that he was prejudiced by his counsel's allegedly deficient performance. Under those circumstances, he cannot show entitlement to relief under § 2255 based upon a claim of ineffective assistance of counsel. His § 2255 motion (ECF No. 113) will be denied.

---

[1]   Brooks does not request the government to produce the video footage to him. One district court has explained:

> Pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings, a party in a § 2255 matter may only conduct discovery upon leave of court, which will only be granted following a showing of good cause. Good cause will only be shown where the request for discovery presents "reason to believe that [the petitioner] may, if the facts are fully developed, be able to demonstrate that he is entitled to relief" if permitted to engage in discovery. In re Platts, 573 F. App'x 87, 88 (3d Cir. 2014) (quoting Bracy v. Gramley, 520 U.S. 899, 908–09 (1997)).

Drummond v. United States, No. CV 21-3766 (ES), 2021 WL 3661275, at *2 (D.N.J. Aug. 18, 2021). Brooks complains that his counsel did not provide him the video footage, but does not make any showing that the video footage provides a basis for him to argue that he is entitled to relief in this case. Under those circumstances, even if Brooks requested the video footage, the court would deny his request for discovery within the context of his § 2255 motion.

VI.     **Certificate of Appealability**

When a district court issues a final order denying a § 2255 motion, the court must also make a determination about whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination about whether a certificate should issue. See 3d Cir. LAR. 22.2.

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v McDaniel, 529 U.S. 473, 484-85 (2000).

Based upon the motion, files and records of the instant case, and for the reasons set forth above, the court finds that Brooks did not show jurists of reason would find it debatable whether there was a denial of a constitutional right. Therefore, a COA should not issue.

An appropriate order will be entered.

**BY THE COURT**,

December 21, 2021                               **/s/ JOY FLOWERS CONTI**
                                                           Joy Flowers Conti
                                                           Senior United States District Judge